**Barry Alan ROBBINS,
Petitioner–Appellant,**

v.

**Robert CHRISTIANSON, Warden,
Respondent–Appellee.**

No. 88–5537.

United States Court of Appeals,
Ninth Circuit.

Submitted April 13, 1990 *.

Decided May 30, 1990.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a).

Bernard L. Segal, William G. Panzer, San Francisco, Cal., for petitioner-appellant.

Scott H. Park, Asst. U.S. Atty., Los Angeles, Cal., for respondent-appellee.

Before BROWNING, NOONAN, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Barry Alan Robbins ("Robbins") appeals the district court's dismissal of his petition for habeas corpus. In his petition, Robbins alleged that his constitutional rights were violated when he was transferred from a community treatment center ("CTC") to a federal prison camp at Lompoc, California. Robbins was transferred as a disciplinary measure because he had allegedly been using restricted drugs while at the CTC. The district court dismissed Robbins' petition as moot since Robbins had been unconditionally released by the time the court reviewed the petition. We reverse.

## BACKGROUND FACTS

Robbins was convicted of tax evasion and was sentenced to eighteen months in prison. When Robbins had six months remaining on his sentence, he was transferred to the CTC, a half-way house. The CTC required that all of its residents participate in random drug testing. On January 6, 1987,

the CTC asked Robbins to provide it with a urine sample for drug testing. The urinalysis indicated that Robbins had been using a restricted drug. In response, the CTC held a disciplinary hearing on January 21, 1987. The hearing was held in front of the director of the CTC. The director disciplined Robbins by transferring Robbins to the Lompoc prison camp and subtracting sixty days of good time credit.

Robbins claims that he did not receive a copy of the discipline report until some thirty days after he had transferred to Lompoc. At that point, the period which Robbins had to appeal the disciplinary action had run. However, Robbins alleges that he did try to appeal the disciplinary action. Unfortunately, it appears that the prison administrators gave Robbins contradictory information on the procedures he needed to use to appeal the decision. Robbins claims that the Lompoc director told Robbins that his appeal had to be taken to the Regional Office of the Bureau of Prisons, but the Regional Office told Robbins that his appeal should be lodged with the camp director. Robbins was unable to resolve the conflict and instead filed this petition for habeas corpus in April of 1987.

The petition was initially heard by a magistrate in early July of 1987. The magistrate held an evidentiary hearing and heard oral argument. At the end of July 1987, and prior to the magistrate's decision, Robbins was unconditionally released from prison. Because Robbins had been released, the magistrate dismissed Robbins' petition as moot. The magistrate ruled that Robbins had not shown that he would suffer any negative collateral consequences from the fact that the disciplinary action remained in his prison file. The district court adopted the magistrate's findings and ordered that Robbins' petition be dismissed. This appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. § 2253.

We review *de novo* a district court's decision denying a petition for habeas corpus. *Jessup v. United States Parole Comm'n*, 889 F.2d 831, 834 (9th Cir.1989).

## DISCUSSION

Generally, a petition for habeas corpus becomes moot should a prisoner be released from custody before the court has addressed the merits of the petition. *Lane v. Williams*, 455 U.S. 624, 632, 102 S.Ct. 1322, 1327, 71 L.Ed.2d 508 (1982). However, the courts recognize an exception in those cases where the prisoner can show that he will suffer some collateral legal consequences if the challenged conviction is allowed to stand. *Id.; see also Sibron v. New York*, 392 U.S. 40, 57, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1968); *Carafas v. LaVallee*, 391 U.S. 234, 237–38, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554 (1968). The doctrine of collateral consequences is a narrow exception to the general mootness rule. As the *Lane* Court explained, in its earlier collateral consequences cases the Court had "held that an attack on a criminal conviction was not rendered moot by the fact that the underlying sentence had expired." 455 U.S. at 632, 102 S.Ct. at 1327. In those earlier collateral consequences cases, the prisoners had been able to show an immediate injury such as the fact that the prisoner could not engage in certain businesses, could not serve as an official of a labor union, could not vote in local elections and could not serve as a juror. *Id.*

The *Lane* Court distinguished the prisoners in its case from the prisoners in the earlier collateral consequences cases. The Court held that the prisoners could not show that they would suffer any collateral consequences from the fact that they had violated parole. 455 U.S. at 632, 102 S.Ct. at 1327. The Court rejected the prisoners' argument that the collateral consequences doctrine extended to the mere fact that the prisoners' records would show parole viola-

tions. 455 U.S. at 632–33, 102 S.Ct. at 1328.[1]

As the Court noted, the prisoners would be affected by "[a]t most, certain non-statutory consequences ... [such as] employment prospects, or the sentence imposed in a future criminal proceeding...." 455 U.S. at 632, 102 S.Ct. at 1327. The Court noted further that it was more likely that an employer or a court would be influenced by the underlying conduct which had caused the parole revocation rather than the mere fact that the prisoners had violated parole. Since the prisoners had not challenged the findings that their conduct had violated the terms of their parole, but had only challenged the fact that they had been returned to custody, the Court stated that it was unable to provide any relief via a habeas corpus proceeding. 455 U.S. at 633, 102 S.Ct. at 1328. The Court concluded that "[a]ny disabilities that flow from whatever [the prisoners] did to evoke revocation of parole are not removed—or even affected—by a District Court order that simply recites that their parole terms are 'void'.... In these circumstances, no live controversy remains." *Id.*

We have followed the *Lane* Court's approach when faced with similar sets of facts. *Cox v. McCarthy*, 829 F.2d 800, 803 (9th Cir.1987) (no collateral consequence when the prisoners did not challenge finding of underlying misconduct); *Aaron v. Pepperas*, 790 F.2d 1360, 1362 (9th Cir. 1986) (no collateral consequence from fact that prison sentence set at particular length of time).

This circuit has not said what result is appropriate when a prisoner attacks the finding of misconduct that caused his parole to be revoked or his sentence to be lengthened. *See, e.g., Cox*, 829 F.2d at 803; *Aaron*, 790 F.2d at 1362. Assuming that Robbins has the burden of demonstrating he will suffer actual harm,[2] we hold under the circumstances of this case that Robbins' showing is adequate.

Robbins argues that he will suffer several collateral consequences should his prison record show that he was disciplined for using drugs. Robbins first argues that his recorded drug use may be used to his detriment should he be charged or convicted of another federal offense. As Robbins notes, the Sentencing Guidelines permit a court to impose more restricted sentences and release conditions on those defendants who have histories of substance abuse. *See* U.S.S.G. § 5B1.4(b)(23) and § 5H1.4. Furthermore, the Guidelines also permit a court to depart based on a defendant's involvement in prior civil adjudications or a defendant's failure to comply with administrative orders. U.S.S.G. § 4A1.3(c); *see United States v. Keys*, 899 F.2d 983, 985, 989–90 (10th Cir.1990) (prison disciplinary record may be used to justify upward departure from Guidelines).

It is true that courts have dismissed arguments similar to Robbins' under the rationale that a person can control whether or not he violates a criminal law. *Lane*, 455 U.S. at 632 n. 13, 102 S.Ct. at 1327 n. 13; *Reimers v. Oregon*, 863 F.2d 630, 632 (9th Cir.1988) (prisoner's civil rights claim that prison officials interfered with his free exercise of religion moot upon prisoner's

---

**1.** Robbins cites several cases from other circuits to support his argument that the collateral consequences doctrine extends to possible impact in future criminal proceedings. *See Shimabuku v. Britton*, 503 F.2d 38, 43 (10th Cir.1974) (possible prejudice in a subsequent criminal proceeding sufficient harm); *Hahn v. Burke*, 430 F.2d 100, 102 (7th Cir.1970), *cert. denied*, 402 U.S. 933, 91 S.Ct. 1522, 28 L.Ed.2d 868 (1971) (revocation of probation a permanent blemish on record and constitutes sufficient harm); *Hewett v. North Carolina*, 415 F.2d 1316, 1322 (4th Cir.1969) (revocation of probation a sufficient harm). All of those cases were decided before the Supreme Court's decision in *Lane. Lane* rejects the argument that the collateral consequences doctrine

covers any future harm caused by the mere presence of a parole violation on a person's record.

**2.** *Compare Sibron*, 392 U.S. at 57, 88 S.Ct. at 1900 ("[A] criminal case is moot only if it is shown that there is no possibility that any collateral legal consequence will be imposed on the basis of the challenged conviction.") *with Lane*, 455 U.S. at 632 n. 13, 102 S.Ct. at 1328 n. 13 ("Collateral review of a final judgment ... is not warranted absent a showing that the complainant suffers actual harm from the judgment that he seeks to avoid.")

release). On the other hand, the Supreme Court has also expressly noted that the use of a conviction in a subsequent criminal proceeding is a collateral consequence. *Evitts v. Lucey*, 469 U.S. 387, 391 n. 4, 105 S.Ct. 830, 833 n. 4, 83 L.Ed.2d 821 (1985). Therefore, the fact that Robbins' record may hurt him in a subsequent criminal action does qualify as a collateral consequence. It might be argued that if Robbins should somehow fall into the toils of the law due to future criminal activity on his part, he can then challenge any attempt to use this incident against him. While we cannot assume that unhappy day will ever come, the Supreme Court has noted that the sooner the issue is litigated the better. *See Sibron*, 392 U.S. at 56, 88 S.Ct. at 1899.

Robbins also argues that he will suffer a collateral consequence when he seeks employment because employers may find out that his prison record contains a disciplinary action for drug use. Robbins' alleged possible loss of employment is sufficiently harmful to constitute a collateral consequence. While Robbins' employment possibilities are most likely to be affected by the fact that he was convicted of a felony, we cannot fully discount the danger created by the drug use finding. A potential employer may well find out about Robbins' disciplinary action if the employer asks Robbins if he has ever been disciplined for any sort of drug use. Thus, Robbins may face some employment discrimination because he was once disciplined for drug use. That possibility of discrimination arising out of prison discipline would seem very speculative had Robbins been disciplined for some conduct other than drug use. *See Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir.1987) (fact that prison record contained disciplinary action for insolence did not mean person would suffer adverse consequences from that record). However, the threat of discrimination is much more real when drug charges are involved.

Our society's feelings are expressed in harsh criminal penalties, 21 U.S.C. § 841 et seq., random drug testing of employees, *see generally National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), and high visibility government campaigns against the drug menace. By the same token, it may well be thought that a person must truly be addicted if he uses drugs when he is living in a restricted setting where there is an announced policy of random drug testing. Robbins is properly concerned about this particular blemish on his escutcheon, even though he may hope to keep it covered up.

We find that the possibility of future harm to Robbins is not too ephemeral to constitute a collateral consequence for mootness purposes. Unlike the prisoner in *Bailey*, Robbins was not disciplined because he was insolent. Nor was Robbins disciplined because he spoke out of turn or committed one of the other infractions that occur every day in a regimented setting. The charge against Robbins was that he was a user of illicit drugs. Given the present climate in our society regarding drug use, that is no minor matter.

## CONCLUSION

We reverse the judgment of the district court. The nature of the underlying charges against Robbins are such that his habeas corpus petition has not become moot. Of course, we express no opinion on the merits of Robbins' case or on the question of whether he properly exhausted his administrative remedies. Those issues must be determined in further proceedings at the district court.

REVERSED.

NOONAN, Circuit Judge, dissenting:

It's a close call—close both because of the attitude towards drugs in parts of our society and because the Supreme Court has furnished contradictory signals. Compare *Lane v. Williams*, 455 U.S. 624, 632 n. 13, 102 S.Ct. 1322, 1328 n. 13, 71 L.Ed.2d 508 (1982) with *Evitts v. Lucey*, 469 U.S. 387, 391 n. 4, 105 S.Ct. 830, 833 n. 4, 83 L.Ed.2d 821 (1985). We have adopted the *Lane* approach in this circuit. *Reimers v. Ore-*

*gon,* 863 F.2d 630, 632 (9th Cir.1988). We should adhere to it now.