46 F.3d 1149
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kevin WOODRUFF, Petitioner-Appellant,
v.
Ronald Y. CHUN, Director of Parole Reg. II Northern
California, Antonio C. Arce, Unit supervisor of Region II
Oakland 5; Yvonnie Porter, Assistant Unit Supervisor of
Region II Oakland 5 and Everett Martin, Parole Agent of
Region II Oakland 5, Defendants-Appellees.
 No. 94-15637.
 United States Court of Appeals, Ninth Circuit.
 Submitted: Jan. 13, 1995.*
Decided: Jan. 27, 1995.
 
 Before: ALDISERT**, CHOY and SCHROEDER, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Kevin Woodruff, a California state prisoner appeals pro se the district court's order dismissing his 28 U.S.C. Sec. 2254 habeas corpus petition. In his petition, Woodruff alleges that his due process rights were violated at a parole revocation hearing when he was denied the right to confront and cross-examine witnesses, and deprived of sufficient notice of the charges against him.
 
 
 3
 The district court had jurisdiction under 28 U.S.C. Sec. 2254. It issued a certificate of probable cause, vesting this court with jurisdiction. 22 U.S.C. Sec. 2253; Fed. R. App. P. 22(a). Appeal was timely filed under Rules 4(a) and 4(c), Federal Rules of Appellate Procedure. We assume, without deciding, that this case is justiciable and was not mooted by Woodruff having served the term of parole revocation. See Robbins v. Christianson, 904 F.2d 492, 494 (9th Cir. 1990); White v. White, 925 F.2d 287, 290 (9th Cir. 1991).
 
 
 4
 We review de novo the denial of a habeas corpus petition, Robbins, 904 F.2d at 494, and affirm.
 
 I.
 
 5
 Woodruff was convicted of grand theft in 1990 and sentenced to two years imprisonment. He was released on parole from state prison on June 7, 1992. On June 17, 1992 he was arrested for violating the conditions of his parole by (1) failing to follow instructions; (2) travelling more than 50 miles from his residence; and (3) engaging in robbery with a weapon. A parole revocation hearing held on July 21, 1992 addressed only the first two violations. For these violations, parole was revoked and Woodruff was ordered to remain in custody for four months. A hearing on the third violation, the robbery, was postponed for ten days because Woodruff claimed insufficient notice of the charges.
 
 
 6
 A parole revocation hearing on the robbery charge was held on July 31, 1992. Three witnesses testified. Detective Stan Brandon disclosed information about a 1991 attempted robbery and shooting in Alameda County, California. He testified that a witness had identified Woodruff as the suspect who ordered the shooting of a jewelry store owner during an attempted robbery. Brandon also testified that the two other suspects of that crime were acquaintances of Woodruff. He further testified that scars on Woodruff's arm and hands could have occurred during that robbery because one of the suspects was cut as he fled the scene. Finally, Brandon testified that the result of a blood test of Woodruff performed by Sharon Binkley, a criminalist of the Alameda County Crime Lab, revealed genetic markers matching the blood recovered at the crime scene, and that this particular combination only occurs in two percent of the black population.
 
 
 7
 The hearing officer also received evidence from Woodruff and his alibi witness, Cindy Buttan. Woodruff denied any knowledge of the incident and testified that he was in Los Angeles at the time of the robbery. Buttan also testified that Woodruff was in Los Angeles at the time of the robbery.
 
 
 8
 The hearing officer found good cause to revoke the parole, and ordered Woodruff to remain in custody for an additional 12 months. Woodruff then exhausted his California administrative and court remedies without success and filed the petition for habeas relief that was denied by the district court.
 
 II.
 
 9
 On appeal Woodruff contends that his due process and confrontation rights were violated at his probation revocation hearing because he was not afforded a meaningful opportunity to challenge the government's evidence.
 
 
 10
 In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court held that the due process standard must be satisfied for parole revocation hearings. Due process requires that a parolee receive a fair and meaningful opportunity to refute or impeach the evidence against him "to assure that the finding of a parole violation will be based on verified facts." Id. at 484. The Court also noted, however, that "the full panoply of rights due a defendant in [a criminal prosecution] does not apply to parole revocations." Id. at 480.
 
 
 11
 Review of parole revocation decisions is limited to determining whether the Commission has acted outside its statutory authority or has committed a constitutional violation. Wallace v. Christensen, 802 F.2d 1539, 1551-52 (9th Cir. 1986) (en banc). Because revocation is a narrow inquiry, "the process should be flexible enough to consider evidence including letters, affidavits, and other materials that would not be admissible in an adversary criminal trial." Morrissey, 408 U.S. at 489.
 
 
 12
 We engage in "a process of balancing the [parolee's] right to confrontation against the Government's good cause for denying it." United States v. Simmons, 812 F.2d 561, 564 (9th Cir. 1987). Woodruff was denied the opportunity to cross-examine Sharon Binkley, the criminalist from the Alameda County Crime Lab, whose report was received throughout the testimony of Detective Brandon. Because these reports demonstrated substantial indicia of reliability, we conclude that under the circumstances there was good cause to permit the government to avoid the difficulty and expense of bringing Ms. Binkley to the hearing. See United States v. Bell, 785 F.2d 640, 643 (8th Cir. 1986). We find no actual prejudice resulting from this denial.
 
 
 13
 Woodruff also was denied the opportunity to cross-examine the victim of the robbery. Again, we find no actual prejudice. Police investigation disclosed that Petitioner's genetic blood markers, scars and association with the other two suspects all point convincingly to Woodruff. The absence of the eyewitness did not have a "substantial and injurious effect or influence" on the outcome of this hearing. See Brecht v. Abrahmson, U.S. , 113 S. Ct. 1710, 1722 (1993).
 
 III.
 
 14
 Finally, we address Woodruff's contention that he was deprived of sufficient notice of the charges against him. Although he was not supplied with the police report at the initial probation revocation hearing, his parole agent then supplied him with a supplemental report describing the 1991 attempted robbery and shooting, and detailing the information identifying Woodruff as the suspect. Accordingly, by the time of the second parole revocation hearing, he had adequate notice and actual knowledge of the charge against him.
 
 IV.
 
 15
 For the reasons enumerated above, we AFFIRM.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed. R. App. P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3