No. 95-3629

Randy G. Spencer,                          *
                                           *
           Appellant,                      *
                                           *   Appeal from the United States
     v.                                    *   District Court for the
                                           *   Western District of Missouri.
Mike Kemna;                                *
Missouri Attorney General,                 *
                                           *
           Appellees.                      *

Submitted:  May 17, 1996

Filed:  August 2, 1996

Before BOWMAN, HEANEY, and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

     Randy G. Spencer appeals the district court's[1] dismissal of his 28 U.S.C. § 2254 petition as moot.  We affirm.

**I.**

     Spencer was convicted in Missouri state court of felony stealing and burglary and was sentenced to concurrent terms of three years' imprisonment.  He began serving his sentences on October 17, 1990, and was paroled on April 16, 1992.  Spencer's parole was revoked on September 24, 1992, following a revocation hearing before the Missouri Board of Probation and Parole.  The Board revoked Spencer's parole based on a violation report alleging that he had committed rape, used cocaine, and used a dangerous

---

[1]The Honorable Elmo B. Hunter, United States District Judge for the Western District of Missouri.

weapon.

Spencer filed this section 2254 petition on April 1, 1993, against Mike Kemna, Superintendent of the Western Missouri Correctional Center, and the Attorney General of Missouri (the State). The petition alleged that: (1) Spencer was denied the right to a preliminary hearing on his parole violations; (2) his conditional release date of October 16, 1992, was suspended without a hearing; (3) his parole revocation hearing violated his due process rights, in that he was denied counsel, he was not allowed to confront adverse witnesses, and the sole evidence against him was the violation report; and (4) he had to wait four months to receive a statement of the reasons why his parole was revoked.

The district court ordered the State to show cause by June 3, 1993, why Spencer's habeas relief should not be granted. The State requested and received two extensions of time until July 7 to file a response. Spencer objected to both motions for extensions of time, stating that the requests for extensions were designed to vex, harass, and infringe upon his substantive rights. The State filed a response to the show cause order on July 7, arguing that Spencer's claims were procedurally barred, or, alternatively, that the claims should be dismissed on their merits.

On July 14, Spencer filed a motion for final disposition of the matter, arguing that because he could be released as early as August 7, he would suffer irreparable harm if his petition was not decided before that date, in that his petition would become moot and he would have no other way to vindicate his rights. Spencer alleged that the State's motive in requesting extensions was to cause his petition to become moot. He also argued the merits of his petition.

Spencer was released on parole on August 7, 1993, and was discharged from parole upon completion of his sentences on October

16.  On February 3, 1994, the district court noted Spencer's motion for final disposition and stated that "[t]he resolution of this case will not be delayed beyond the requirements of this Court's docket."  On August 23, 1995, the district court dismissed the petition for habeas relief as moot because the sentences had expired.

Spencer argues on appeal that the district court erred in denying his petition as moot because the court's own delays caused the petition to become moot, he will suffer adverse future consequences due to the denial of the petition, and it is in the public interest to address the merits of his petition.  Spencer notes that he is currently incarcerated on unrelated charges and that his prior parole revocation will affect his future chances of obtaining parole.

## II.

An attack on a criminal conviction is not rendered moot by the fact that the underlying sentence has expired if substantial penalties remain after the satisfaction of the sentence.  Carafas v. LaVallee, 391 U.S. 234, 237 (1968).  Such penalties include the right to engage in certain businesses, to hold certain offices, to vote in state elections, or to serve as a juror.  Id.  The court will, in fact, presume that collateral consequences stem from a criminal conviction even after release.  See Sibron v. New York, 392 U.S. 40, 57 (1968); Leonard v. Nix, 55 F.3d 370, 373 (8th Cir. 1995).  The Supreme Court has held, however, that no similar penalties result from a finding that an individual has violated parole.  Lane v. Williams, 455 U.S. 624, 632 (1982).

In Lane, two defendants pleaded guilty to state court prosecutions without being informed that their negotiated sentences included a mandatory parole term.  Both were released on parole and reincarcerated for parole violations, and both filed habeas corpus

petitions requesting their release.  Both had completed their parole terms by the time the court of appeals entered an order declaring the mandatory parole terms void.  Id. at 265-30.  The Supreme Court determined that the petitions were moot because the petitioners attacked only their sentences, which had expired; they did not attack, either on substantive or procedural grounds, the finding that they violated the terms of their parole.  Id. at 631, 633.

The Court went on to find that, unlike a criminal conviction, no civil disabilities result from a parole violation finding.  The Court stated that "[a]t most, certain nonstatutory consequences may occur."  Id. at 632.  The Court found that the collateral consequence arising from the possible effect of the parole revocation on future parole decisions was "insufficient to bring this case within the doctrine of Carafas."  Id. at 632 n.13.  Relying on the relevant Illinois law, the Court noted that the existence of a prior parole violation did not render an individual ineligible for parole, but was simply one factor among many considered by the parole board.  Id. at 633 n.13.

We have dismissed a habeas corpus appeal challenging a parole revocation for lack of jurisdiction as moot when the movant was again paroled before the case was orally argued.  Watts v. Petrovsky, 757 F.2d 964, 965-66 (8th Cir. 1985) (per curiam).  We considered as too speculative to overcome mootness the argument that the movant's parole could once again be revoked and the prior parole revocation report used against him.  Id. at 966.

Spencer first attempts to distinguish Lane on the ground that, unlike the petitioners in that case, he attacked not only his sentence, but also the underlying basis of his parole violations.  This distinction has been used by courts of appeals in other circuits to overcome mootness in the parole revocation context.  See United States v. Parker, 952 F.2d 31, 33 (2d Cir. 1991);

-4-

<u>Robbins v. Christianson</u>, 904 F.2d 492, 495-96 (9th Cir. 1990). It must be recognized, however, that the Court in <u>Lane</u> went on to hold that the possible collateral consequences in future parole hearings stemming from a finding of parole violation are insufficient to overcome mootness. <u>Lane</u>, 455 U.S. at 632-33 & n.13. This part of the Court's holding Spencer cannot overcome.

Spencer attempts to further distinguish <u>Lane</u> on the ground that it relies on Illinois, rather than Missouri, law. We find this purported distinction unpersuasive. The Illinois regulations relied upon in <u>Lane</u> explicitly provided that the parole board should consider an individual's prior parole violations as a factor in determining whether parole should be granted. <u>Lane</u>, 455 U.S. at 639 (Marshall, J., dissenting). Under Missouri statutes and regulations, the Board does not explicitly rely on a prior parole violation even as one factor in its decision regarding whether to grant parole.[2] <u>Lane</u>'s holding, therefore, is even more

_____

[2]The Missouri statute concerning parole provides, in relevant part:

> When in its opinion there is reasonable probability that an offender of a correctional center can be released without detriment to the community or to himself, the board may in its discretion release or parole such person except as otherwise prohibited by law.

Mo. Rev. Stat. § 217.690.1 (1994).

In addition, the statute provides that "[t]he Board shall adopt rules . . . with respect to the eligibility of offenders for parole." Mo. Rev. Stat. § 217.690.3 (1994).

Pursuant to this section, the board has adopted regulations stating that the reasons for its decisions to deny parole include:

1. Release at this time would depreciate the seriousness of the offense committed or promote disrespect for the law;
2. There does not appear to be a reasonable probability at this time that the inmate would live and remain at liberty without violating the law;
3. The inmate has not substantially observed the rules of the institution in which confined; and

applicable

---

4. Release at this time is not in the best interest of society.

Mo. Code Regs. tit. 14, § 80-2.010(9)(A) (1992).

The regulations explicitly state that a parole violator "can be considered for parole at a later time." Mo. Code Regs. tit. 14, § 80-4.030(4) (1992).

to a case arising under Missouri law.

Spencer finally attempts to distinguish his case from both Lane and Watts on the ground that the collateral consequences of his parole revocation are not speculative as to him, in that he is once again incarcerated and is facing new parole hearings. Although Spencer's possible collateral consequences are not as speculative as those in Watts, 757 F.2d at 966, we conclude that they remain too speculative to overcome a finding of mootness. Given the Board's wide discretion in releasing a prisoner on parole, we cannot say that the Board will rely on Spencer's previous parole violation in making its decision. Moreover, Spencer placed himself in his present position, in which collateral consequences stemming from his parole revocation become more likely. As noted of the petitioners in Lane, Spencer was "able--and indeed required by law--to prevent such a possibility from occurring." Lane, 455 U.S. at 633 n.13.

## III.

Spencer argues that his action should not be dismissed as moot because the important public interest in due process in parole revocation proceedings excepts his case from the mootness doctrine. He argues that because of the important public interest, he need not show that he will be personally affected by the outcome.

To be excepted from the mootness doctrine, the matter must be

"`capable of repetition, yet evading review,'" and there must be "`a reasonable expectation that the complaining party would be subjected to the same action again.'"  Lane, 455 U.S. at 633-34 (quoted citations omitted); see also DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (per curiam) (although state law may save case from mootness based on public interest, federal courts require litigants' rights be affected).  Spencer must show a "reasonable likelihood" that he will be affected by the Board's allegedly unconstitutional parole revocation procedures in the future.  See Honig v. Doe, 484 U.S. 305, 318 (1988).  "[A] mere physical or theoretical possibility" is insufficient to satisfy the test.  Murphy v. Hunt, 455 U.S. 478, 482 (1982).

We do not find a reasonable likelihood that Spencer will again be affected by the Board's parole revocation procedures.  Assuming that Spencer is paroled from his present incarceration, we will not assume that he will violate his parole terms in order to again undergo revocation proceedings.  See Honig, 484 U.S. at 320 (generally unwilling to assume party will repeat misconduct).

The order of dismissal is affirmed.

HEANEY, Circuit Judge, concurring.

I concur in the result reached by the majority only because I agree we are bound by the United States Supreme Court's decision in Lane v. Williams, 455 U.S. 624 (1982).  Were I writing on a clean slate, I would reverse the district court because it seems clear that Spencer may suffer collateral consequences as a result of the revocation of his parole.

It is unfortunate that the decision on whether the revocation hearing comported with due process was delayed for so long that the matter became moot by Spencer's release from prison.  If nothing else, this case highlights the necessity of making prompt decisions

in revocation cases.

A true copy.

Attest:

      CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.