**Stephen Leslie WILSON, Petitioner–Appellant,**

v.

**C.A. TERHUNE;  Robert Ayers, Warden, Respondents–Appellees.**

**No. 01–17448.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 11, 2002.

Filed Feb. 6, 2003.

Allison Claire, Assistant Federal Public Defender, Sacramento, CA, for the petitioner-appellant.

James E. Flynn, Deputy Attorney General, Sacramento, CA, for the respondents-appellees.

Before: TASHIMA, THOMAS, and PAEZ, Circuit Judges.

TASHIMA, Circuit Judge.

Stephen Leslie Wilson, a California state prisoner, appeals the judgment of the district court, denying his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Wilson contends that the district court erred in denying his petition as moot. The court held that there is not an irrebuttable presumption of collateral consequences to prison disciplinary proceedings and that the collateral consequences Wilson asserts are either the result of his escape or too speculative to warrant relief. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm.

## BACKGROUND

In November 1982, Wilson entered a guilty plea to first degree murder and was sentenced to a term of 25 years to life imprisonment. Wilson escaped from Folsom State Prison in 1984 and was apprehended in London, England, in April 1992. In October 1992, Wilson was extradited to the United States pursuant to the Extradition Treaty between the United States and Great Britain, June 8, 1972–Oct. 21, 1976, U.K.-U.S., 28 U.S.T. 227.

Wilson was then returned to Folsom and was placed in administrative segregation for seven-and-one-half months because he was considered a "threat to the safety and security of the institution." At that time, his classification score was 90, the same as it had been when he escaped. Wilson was held in administrative segregation for this length of time because his escape offense constituted a rules violation for which a prison disciplinary hearing was required. Wilson, however, had the hearing postponed while awaiting a decision by the Sacramento County District Attorney's office regarding whether to prosecute him on escape charges. On March 11, 1993, Wilson withdrew his request to postpone the hearing.

On April 1, 1993, the district attorney requested a waiver of the rule of speciality under the Extradition Treaty in order to prosecute Wilson on escape charges.[1] The United Kingdom refused to grant a waiver, stating that escape was not an extraditable offense. Consequently, the district attorney dismissed the escape charges. Prison officials then decided to pursue disciplinary proceedings for the escape.

A hearing was held on the disciplinary charges associated with Wilson's escape. Wilson did not deny that he escaped, but he denied the charges on the ground that the Extradition Treaty did not permit him to be charged and disciplined for the escape. Wilson was found guilty and was assessed 150 days loss of good-time credits, 90 days loss of privileges, and 10 days confined-to-quarters status with credit for time served. His classification score was also increased to 102. The loss of 150 days of good-time credit was later eliminated.

In 1994, Wilson applied for permission to marry. The marriage was permitted but family visits were denied "based on

---

1. The rule of speciality is set forth in Article XII of the Extradition Treaty, which provides, in part, that "[a] person extradited shall not be detained or proceeded against in the territory of the requesting Party for any offense other than an extraditable offense."

escape/security concerns."[2] The regulation governing family visits was subsequently amended to prohibit family visits for several categories of inmates, including those who, like Wilson, are designated Close A or Close B custody or are sentenced to life without a parole date established by the Board of Prison Terms. Cal. Code Regs. tit. 15, § 3174(e)(2). Wilson was allowed contact visits after his return. In 1998, he was transferred to Pelican Bay State Prison after a package mailed to him was found to contain escape paraphernalia.

Wilson filed a habeas petition in federal district court after his habeas petitions were denied in state court. The magistrate judge found that all the punishment imposed as a result of the disciplinary action had been either withdrawn or completed at the time of Wilson's petition. The magistrate judge further reasoned that the other consequences alleged by Wilson—the denial of good-time credits and family or conjugal visits, and the transfer to Pelican Bay State Prison— were the result of the fact of Wilson's escape, not of the disciplinary conviction. Because the punishment was completed, the magistrate judge concluded that Wilson's petition was moot and recommended that the petition be denied and the action dismissed on that ground.

In his objections to the magistrate judge's findings and recommendations, Wilson argued that there is an irrebuttable presumption that habeas petitioners suffer collateral consequences sufficient to prevent mootness, citing *Chacon v. Wood*, 36 F.3d 1459 (9th Cir.1994). The district court, however, distinguished *Chacon* on the basis that *Chacon* held that there are always collateral consequences to a *conviction*, but that this was not necessarily true for prison disciplinary proceedings. The

court further concluded that the collateral consequences asserted by Wilson were "either the result of the fact of escape or too speculative to justify relief." The court therefore denied the petition. Wilson timely appeals.

## STANDARD OF REVIEW

The district court's denial of a petition for a writ of habeas corpus is subject to de novo review. *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.2000). The district court's factual findings are reviewed for clear error. *Id.*

## DISCUSSION

A case becomes moot when "it no longer present[s] a case or controversy under Article III, § 2, of the Constitution." *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). In order to satisfy the case-or-controversy requirement, the parties must have a personal stake in the outcome of the suit throughout "all stages of federal judicial proceedings." *United States v. Verdin*, 243 F.3d 1174, 1177 (9th Cir.), *cert. denied*, 534 U.S. 878, 122 S.Ct. 178, 151 L.Ed.2d 123 (2001). "A habeas petition challenging the underlying conviction is never moot simply because, subsequent to its filing, the petitioner has been released from custody." *Chacon*, 36 F.3d at 1463. Some collateral consequence of the conviction must exist, however, in order for the suit to be maintained. *Spencer*, 523 U.S. at 7, 118 S.Ct. 978.

Wilson contends that we have abolished the mootness doctrine in habeas cases, citing *Chacon*. In *Chacon*, we stated that " 'collateral consequences flow from *any* criminal conviction' " because, "[o]nce con-

---

**2.** Family visits are "extended and overnight" visits between inmates and members of the inmate's immediate family. Cal.Code Regs. tit. 15, § 3174.

victed, one remains forever subject to the prospect of harsher punishment for a subsequent offense as a result of federal and state laws that either already have been or may eventually be passed." *Chacon,* 36 F.3d at 1463 (quoting *Hirabayashi v. United States,* 828 F.2d 591, 606 (9th Cir. 1987)). We therefore held that the petitioner's challenge to his conviction was not rendered moot by his release from custody. *Id.*

*Chacon,* however, is inapposite because Wilson is not challenging his conviction but a prison disciplinary proceeding. Wilson contends that (1) the presumption of collateral consequences applies to prison disciplinary convictions, and (2) if not, he has alleged collateral consequences sufficient to meet the case-or-controversy requirement. We hold that the presumption of collateral consequences does not apply to prison disciplinary proceedings. We further conclude that Wilson has not alleged collateral consequences sufficient to avoid dismissal on the ground of mootness. We, therefore, affirm the district court.

## I. Presumption of Collateral Consequences

■ The Supreme Court has held that the presumption of collateral consequences does not apply to the revocation of parole. *Spencer,* 523 U.S. at 12–14, 118 S.Ct. 978. Wilson argues that the presumption of collateral consequences should, however, apply to prison disciplinary proceedings because institutional consequences of the rules violation charge (a "115"[3]) are not only possible, but inevitable. He asserts that the 115 will affect "classification, institutional and housing assignments, and privileges," and that a serious rules violation may result in a delay or denial of parole. The consequences cited by Wilson

are not sufficient to justify applying the presumption to disciplinary proceedings.

The Supreme Court has distinguished between "substantial civil penalties" that result from a criminal conviction, such as the inability to engage in certain businesses, to serve as an official of a labor union, to vote in state elections, and to serve as a juror, and "non-statutory consequences" that "result from a finding that an individual has violated parole," such as the effect on employment prospects or the sentence imposed in future criminal proceedings. *Lane v. Williams,* 455 U.S. 624, 632, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982); *see also Spencer,* 523 U.S. at 12–13, 118 S.Ct. 978 (quoting *Lane* ). The latter consequences are "discretionary decisions" that "are not governed by the mere presence or absence of a recorded violation," but "are more directly influenced by[ ] the underlying conduct that formed the basis for the parole violation." *Lane,* 455 U.S. at 632–33, 102 S.Ct. 1322.

Similarly here, the consequences placed on Wilson are discretionary decisions that are more likely to be influenced by the underlying conduct of his escape, which he does not deny, rather than by the disciplinary proceeding for the escape. That is, Wilson would be considered a security threat because he has previously escaped, not merely because the escape was recorded on a 115.

Wilson argues that the likelihood of delayed or denied parole is analogous to the possibility of a future enhanced sentence, citing *Chacon,* or the possibility of deportation, citing *Park,* and is therefore sufficient to prevent mootness. The possibility of a future enhanced sentence, however, has been rejected by the Supreme Court as a basis on which to prevent mootness.

---

**3.** "115" is the shorthand reference used by the parties for a rules violation charge be-

cause inmate misconduct is reported on California Department of Corrections Form 115.

*Spencer,* 523 U.S. at 13, 15, 118 S.Ct. 978. Furthermore, in *Park,* there was more than a possibility of deportation; the petitioner had already been ordered deported on the basis of his conviction. *See Park,* 202 F.3d at 1148. The petitioner therefore suffered an actual consequence from his conviction. *Id.; cf. Zegarra–Gomez v. INS,* 314 F.3d 1124, 1125–27 (9th Cir.2003) (holding that the petitioner's deportation did not render his habeas petition moot because he faced the actual collateral consequence of being ineligible to return to the United States for 20 years). Because the decision whether to grant parole is left to "the judgment of the" Board of Prison Terms, Cal.Code Regs. tit. 15, § 2402, the likelihood of delayed or denied parole is a type of nonstatutory consequence dependent on discretionary decisions that is insufficient to apply the presumption of collateral consequences. *See Spencer,* 523 U.S. at 13, 118 S.Ct. 978 (rejecting the notion that the possibility of an enhanced future sentence constitutes a collateral consequence).

We therefore decline to apply the presumption of collateral consequences to prison disciplinary proceedings. *Cf. Diaz v. Duckworth,* 143 F.3d 345, 346 (7th Cir. 1998) (reasoning that *Spencer* had confined the presumption to convictions and so the court's extension of the presumption to prison disciplinary proceedings was no longer good law). The next question is

whether Wilson has alleged consequences sufficient to meet the case-or-controversy requirement.

## II. Wilson's Allegations of Collateral Consequences

■ Wilson does not challenge the punishment he received as a result of the disciplinary proceeding, which he acknowledges is no longer at issue. Rather, he contends that the existence of the 115 itself will result in adverse collateral consequences. The district court concluded that the consequences alleged by Wilson were "either the result of the fact of escape or too speculative to justify relief." We agree.

Wilson identifies the following collateral consequences: the denial of conjugal visits, his transfer to Pelican Bay State Prison, and the increase in his classification score.[4] Wilson analogizes his case to *Robbins v. Christianson,* 904 F.2d 492 (9th Cir.1990), in which we concluded that the possibility of employment discrimination in the future on the basis of a prison disciplinary action for drug use was "not too ephemeral to constitute a collateral consequence for mootness purposes."[5] *Id.* at 496. Wilson contends that the possibility of impaired job prospects is analogous to the possibility of impaired parole prospects that he faces as a result of the disciplinary violation.

---

4. Wilson also alleges that the disciplinary conviction will likely diminish his prospects of receiving parole, citing Cal.Code Regs. tit. 15, § 2410(d), which precludes the application of postconviction credit if a prisoner commits serious or numerous infractions of departmental regulations. Section 2410(d) is inapplicable to Wilson because it applies to serious disciplinary violations that could result in rescission of parole once a parole date has been established, *see* Cal.Code Regs., tit. 15, § 2410(a), and Wilson has not yet been granted a parole date.

5. *Robbins* also concluded that the possibility of a harsher sentence in any future criminal proceedings was another collateral consequence sufficient to prevent mootness. 904 F.2d at 495. This type of collateral consequence was rejected in *Spencer,* in which the Court stated that the habeas petitioner is expected to prevent such a possibility by avoiding violating the law. *Spencer,* 523 U.S. at 13–15, 118 S.Ct. 978.

*Robbins,* however, is distinguishable because the petitioner there challenged the underlying finding of misconduct—the alleged drug use—that was the basis for the disciplinary action. *See id.* at 495 (stating that "[t]his circuit has not said what result is appropriate when a prisoner attacks the finding of misconduct that caused his parole to be revoked or his sentence to be lengthened"). By contrast, Wilson has not challenged the fact that he escaped. This fact is more likely to influence Wilson's parole prospects than the existence of the 115. Similar to *Lane,* in which the Court reasoned that "[a]ny disabilities that flow from whatever respondents did to evoke revocation of parole are not removed—or even affected—by a District Court order that simply recites that their parole terms are 'void,'" *Lane,* 455 U.S. at 633, 102 S.Ct. 1322, the consequences of Wilson's escape are not likely to be affected by an order removing the disciplinary conviction from his record.

Wilson next argues that the 115 is a basis for the denial of parole, citing Cal. Code Regs. tit. 15, § 2402(c)(6). As discussed above, however, the decision to grant parole is discretionary. The regulation specifically states that "serious misconduct in prison or jail" is one circumstance "tend[ing] to indicate unsuitability for release," and that "the importance attached to any circumstance . . . is left to the judgment of the panel." Cal.Code Regs. tit. 15, § 2402(c). Moreover, the regulation does not state that a rules violation charge is a circumstance to be considered, but instead cites serious misconduct as a factor for consideration. Thus, Wilson's escape, not the 115, is the circumstance that would be considered by the Board of Prison Terms.

The denial of conjugal visits is unrelated to Wilson's disciplinary conviction for escape. Wilson is ineligible for family visits both because he was convicted of a violent offense involving a family member, pursuant to Cal.Penal Code § 187, and because he is sentenced to a life term without a parole date. *See* Cal.Code Regs. tit. 15, § 3174(e)(1) & (2).

Wilson alleges that his transfer to Pelican Bay is an adverse consequence because it is "notorious for its harsh conditions." However, Wilson was transferred to Pelican Bay, not as a result of the disciplinary conviction, but because, in 1998, several years after the disciplinary proceeding, Wilson received escape paraphernalia in a mailed package. The record also reveals that Wilson himself asked to remain at Pelican Bay "due to his susceptibility to skin cancer and wanting to live in a northern, cooler climate."

Finally, Wilson argues that his classification was increased 14 points as a result of the disciplinary conviction. Wilson does not, however, name any specific consequence he has suffered or may suffer as a result of this score, making only vague and unsupported allegations. Wilson has failed to allege a collateral consequence sufficient to meet the case-or-controversy requirement. *Cf. Spencer,* 523 U.S. at 14–16, 118 S.Ct. 978 (rejecting the petitioner's alleged consequences as "a possibility rather than a certainty or even a probability" and as "purely a matter of speculation").

## CONCLUSION

We hold that the presumption of collateral consequences does not apply to prison disciplinary proceedings. The collateral consequences Wilson alleges regarding parole are discretionary decisions and therefore speculative; moreover, they are more likely to be affected by the fact of his escape, a finding that he does not challenge, rather than the 115. The other consequences are either vague and unsupported or unrelated to the disciplinary con-

viction. Wilson therefore has not alleged collateral consequences sufficient to meet the case-or-controversy requirement. The decision of the district court denying Wilson's petition as moot is

**AFFIRMED.**