**Phillip MUNOZ, Petitioner–Appellant,**

v.

**James ROWLAND; William Bunnell; P.R. Smith; Carl Ford, Respondents–Appellees.**

**No. 95–17401.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1996.

Submission Withdrawn Oct. 10, 1996.

Resubmitted Jan. 9, 1997.

Filed Jan. 15, 1997.

---

* The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Lauren J. Weil, Assistant Federal Defender, Sacramento, CA, for petitioner-appellant.

Joan W. Cavanagh, Deputy Attorney General, Sacramento, CA, for respondents-appellees.

Before: WALLACE, SNEED, and RYMER, Circuit Judges.

WALLACE, Circuit Judge:

Munoz appeals from the district court's denial of his petition for writ of habeas corpus. The district court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction over this timely appeal under 28 U.S.C. §§ 1291 and 2253. Because Munoz has been released from custody in the interim, we dismiss this appeal as moot.

### I

Munoz entered the California prison system on February 7, 1986, following his conviction and sentence for voluntary manslaughter and assault with a deadly weapon. Despite suspected gang involvement, prison officials initially placed Munoz in the general population. He was transferred among various prisons within the California system before arriving at the California Training Facility at Soledad on November 5, 1986. Almost a year later, Munoz was placed in adminis-

trative segregation while Soledad officials investigated the activities of the "XIV" prison gang.

On September 10, 1987, Munoz was transferred to Tehachapi. At his initial classification review, he was validated as an associate of the "XIV" prison gang, and assigned to the Secured Housing Unit (SHU) indefinitely. On May 16, 1990, Munoz was transferred to the SHU at Pelican Bay State Prison.

On May 22, 1990, Munoz filed a pro se civil rights action under 42 U.S.C. § 1983. The district court converted that action into a habeas corpus petition, and stayed it pending exhaustion of state remedies. Proceedings began again in the district court after the Supreme Court of California summarily denied Munoz's petition for writ of habeas corpus on August 28, 1992.

Munoz argued before the district court that his indefinite assignment to segregated housing violated due process of law because it was based on unreliable and outdated information, and because he was unable to obtain meaningful periodic review of that placement. He also contended that the requirement that inmates reveal information about gang activities in order to be released from the SHU violates due process, his Fifth Amendment right against self-incrimination, and the Eighth Amendment ban on cruel and unusual punishment. Finally, Munoz argued that the general conditions of confinement in the SHU violate the Eighth Amendment. On August 23, 1995, the district court held that Munoz had failed to establish any violation of his constitutional rights. This appeal followed. On April 3, 1996, Munoz was released from Pelican Bay on parole.

### II

Our statutory jurisdiction to consider Munoz's appeal is not necessarily affected by his release from custody. *See Cox v. McCarthy*, 829 F.2d 800, 802–03 (9th Cir.1987). We are precluded by Article III of the Constitution, however, from entertaining an appeal if there is no longer a live case or controversy. *E.g., id.* at 803.

Because Munoz has been released from the SHU, we can no longer provide him

the primary relief sought in his habeas corpus petition. Munoz's Fifth and Eighth Amendment challenges to the "debriefing" process and the conditions of confinement in the SHU are therefore moot, and must be dismissed.

■ We have held that if a petitioner challenges the validity of his underlying conviction, the collateral consequences of that conviction may be sufficient to overcome mootness despite his subsequent release from prison. *Id.; De Kaplany v. Enomoto,* 540 F.2d 975, 976–77 n. 2 (9th Cir.1976) (en banc), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977). In *Robbins v. Christianson,* 904 F.2d 492 (9th Cir.1990) (*Robbins*), the petitioner was disciplined by prison officials for using illegal drugs. We held that the petitioner could challenge that misconduct finding even though he had subsequently been released from prison. There were "collateral consequences" because his prison drug record could be used to enhance his sentence under the Sentencing Guidelines if he were convicted of another federal crime, and there was the possibility of future employment discrimination. *Id.* at 495–96.

■ Munoz has been identified as an associate of a prison gang by California prison officials. Because that finding will probably lead prison officials to assign him to the SHU if he ever re-enters the California prison system, Munoz argues that his due process challenge to its accuracy is not moot.

■ *Robbins* does not control our decision. California's policy of assigning suspected gang affiliates to the SHU is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates. Although there are some minimal legal limitations, *see, e.g., Toussaint v. McCarthy,* 801 F.2d 1080 (9th Cir.1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987), the assignment of inmates within the California prisons is essentially a matter of administrative discretion. Such decisions have little in common with the disciplinary action involved in *Robbins*.

*Robbins* also rested heavily on the "nature of the underlying charges against Robbins." *Robbins,* 904 F.2d at 496.

We find that the possibility of future harm to Robbins is not too ephemeral to constitute a collateral consequence for mootness purposes. Unlike the prisoner in *Bailey* [*v. Southerland,* 821 F.2d 277, 279 (5th Cir.1987) ], Robbins was not disciplined because he was insolent. Nor was Robbins disciplined because he spoke out of turn or committed one of the other infractions that occur every day in a regimented setting. The charge against Robbins was that he was a user of illicit drugs. Given the present climate in our society regarding drug use, that is no minor matter.

*Id.* Although public sentiment toward gangs and persons affiliated with them is increasingly hostile, the appeal before us resembles *Bailey,* 821 F.2d at 279 (case moot despite prison disciplinary record for insolence), and *Vandenberg v. Rodgers,* 801 F.2d 377, 378 (10th Cir.1986) (case moot despite prison "incident report" for refusal to return to general population), more closely than it resembles *Robbins.* Associating with gang members is not, standing alone, a crime even outside of prison; drug use is. *Robbins* recognized that the "possibility of discrimination arising out of prison discipline would seem very speculative had Robbins been disciplined for some conduct other than drug use." *Robbins,* 904 F.2d at 496.

Our limitation in *Robbins* fits this appeal. *Robbins* should not be extended into such an attenuated context as the case before us. The fact that a nondisciplinary finding about Munoz's gang affiliations may influence a purely administrative classification decision, should he someday return to prison, is far too "ephemeral to constitute a collateral consequence for mootness purposes." *Id.* Munoz does not argue that his "gang-associate" classification could have an impact on a later criminal prosecution or sentence, *see id.* at 495–96, so we do not consider that issue here. Because all of Munoz's claims are moot, this appeal is dismissed.

DISMISSED.