OPINION
IKUTA, Circuit Judge:
The two appeals consolidated in this opinion require us to identify the appropriate standard for determining whether a *995 claim is cognizable under the federal habe-as statute.[1] Applying Skinner v. Switzer, we conclude that a Claim challenging prison disciplinary proceedings is cognizable in habeas only if it will “necessarily spell speedier release” from custody, meaning that the relief sought will either terminate custody, accelerate the future date of release from custody, or reduce the level of custody. 562 U.S. 521, 131 S.Ct. 1289, 1299 n. 13, 179 L.Ed.2d 233 (2011) (emphasis added) (internal quotation marks omitted) (citing Wilkinson v. Dotson, 544 U.S. 74, 86, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (Scalia, J., concurring)). To the extent our prior decisions held that a claim is cognizable in habeas if success on the claim is likely to, or has the mere potential to, affect the length of a petitioner’s confinement, they are overruled as irreconcilable with Skinner. See Blair v. Martel, 645 F.3d 1151, 1157 (9th Cir.2011).
I
Damous Nettles and Matta Juan Santos, both prisoners in California state prisons, appeal the district court’s dismissal of their habeas petitions.
A
In 1990, Nettles was convicted in California of attempted first degree murder with use of a firearm, and other offenses. The victim was a woman who had filed a complaint against Nettles’s brother. In order to prevent her from testifying, Nettles took the victim down an alley, ordered her onto her hands and knees, and told her ‘You’re not going to testify against my brother. I’m going to kill you.” Nettles then shot her twice in the left ear and left her in the alley. The victim did not die, but was seriously injured and disfigured.
Nettles was sentenced to prison for a determinate term of twelve years and a life term with the possibility of parole for his' convictions for attempted murder and dissuading and conspiring to dissuade a witness from attending or giving testimony at trial. His minimum eligible parole date was October 19, 2005. An initial parole consideration hearing was held in 2004. Before that hearing, prison staff had issued some thirty-nine rules violations reports (CDC Form 115) to Nettles. These reports are issued for misconduct that “is believed to be a violation of law or is not minor in nature.” Cal. Code Regs. tit. 15, § 3312(a)(3). He also received numerous citations for lesser types of misconduct. See id. § 3312(a)(2) (noting that “documentation of minor misconduct” should be “documented on a CDC Form 128-A”). At his initial parole hearing in 2004, the Board of Prison Terms (now the Board of Parole Hearings, or Board)[2] deemed Nettles to be unsuitable for parole and declined to set a parole date. It scheduled the next parole suitability hearing -for 2006, but the date was postponed several times.
After 2004, Nettles received seven additional rules violations reports. On February 26, 2008, staff issued Nettles a rules violation report for threatening to stab a corrections officer. After an investigation of the incident and a hearing, Nettles was found guilty, and given a four-month term in the segregated housing unit. He also lost thirty days of post-conviction credit.
On July 30, 2009, the Board convened a second parole suitability hearing for Nettles. At the hearing, the presiding commissioner first described the facts of Net- *996 ties’s crime, characterizing it as “one of the most atrocious and cruel acts I’ve read” and stating that Nettles’s motive was “ridiculously heinous.”
The commissioner then reviewed Nettles’s prior criminal history. Nettles had a long string of convictions beginning at age seventeen, and had been in and out of prison for offenses including possession of drugs, assault with a deadly weapon, battery on a peace officer, and robbery. Nettles was on parole for the robbery conviction when he committed the attempted murder for which he was sentenced to life imprisonment. The commissioner stated that Nettles’s lengthy criminal history illustrated his inability to learn from prior imprisonments.
The commissioner next explained the hearing panel’s concerns about Nettles’s mental state and attitude about the crime. In the hearing panel’s view, Nettles’s letter to the victim did not. express true remorse: Further, Nettles had not taken responsibility for his conduct and lacked insight that would enable him to change his behavior. The commissioner discussed a May 2007 psychological report, which gave Nettles “a rating of overall moderate likelihood to become involved in a violent offense if released.” Finally, the commissioner stated that Nettles was argumentative and stubborn, “challenge^] authority at every given opportunity” and refused to restrain himself, as evidenced by his numerous rules violations. The commissioner noted the forty-six rules violation reports that had been issued to Nettles while he was in prison. Nettles “continued to display negative behavior while incarcerated,” and as a result was placed in segregated housing. Moreover, Nettles had not taken any significant steps to gain skills to function outside of prison. Nevertheless, the commissioner noted some positive steps Nettles had taken, including a slight reduction in the number of rules violations reports issued to Nettles in recent years.
The hearing panel concluded that Nettles was unsuitable for parole because he “still pose[d] an unreasonable risk of danger if released from prison.” This finding was “based on weighing the considerations provided in the California Code of Regulations.” As authorized by the regulations, id. § 2306, the commissioner made recommendations regarding “what steps may be undertaken to enhance the possibility of a grant of parole at a future hearing,” id. § 2304, telling Nettles that “[fjor next time, you certainly need to become and remain disciplinary free.”
On January 23, 2009, Nettles filed a habeas petition in the Superior Court of California claiming, in relevant part, that the 2008 rules violation report was illegal, and that the disciplinary proceedings held in connection with the 2008 rules violation report violated his due process rights. The Superior Court denied the petition, concluding that Nettles failed to exhaust his administrative remedies concerning these claims.[3] The California Court of Appeal and California Supreme Court then summarily denied the petition.
On June 10, 2011, Nettles filed a habeas petition in federal court seeking, among other things, “restoration of good time,” presumably referring to the loss of thirty days of post-conviction credits as a result of the 2008 disciplinary decision, and ex-pungement of the February 26, 2008 rules violation report. After being ordered to respond, the state moved to dismiss the petition, arguing that the court lacked jurisdiction to entertain the petition because the 2008 disciplinary decision did not im *997 pact the fact or duration of Nettles’s confinement. Nettles opposed the motion, arguing that the disciplinary decision impacted the duration of his confinement because it delayed his parole hearing and constituted grounds for future denial of parole.
The district court dismissed Nettles’s petition, holding that he could not show that expungement of the 2008 rules violation report was likely to accelerate his eligibility for parole. Nettles timely appealed the district court’s decision.
B
Santos was convicted in 1996 under California Penal Code section 209(a) for participating in a kidnap-for-ransom scheme. He was sentenced to a term of life in prison with the possibility of parole plus nine years.
After prison investigators verified allegations that Santos was a currently active member of the Mexican Mafia, a prison official validated the gang-involvement determination on February 10, 2011. See Cal. Code Regs. tit. 15, § 3878. As a result of this gang validation, Santos was removed from the general prison population and confined in the security housing unit (SHU) indefinitely.
Santos claims that the SHU is a “prison within a prison where prisoners] are denied virtually all privileges.” According to Santos, prisoners placed in the SHU spend approximately twenty-two hours per day in their cells, receive all meals in their cells, are denied contact visits and phone access, and are not allowed to participate in training or education activities. Additionally, a prisoner is ineligible to earn post-conviction credits under California Penal Code section 2933(b) or program credit reductions under California Penal Code section 2933.05 during the time the prisoner is placed in the SHU. Cal. Penal Code § 2933.6.
Santos administratively appealed his gang validation. After his third and final administrative appeal was denied, Santos filed a petition for a writ of habeas corpus in the Superior Court of California arguing, among other things, that the allegations of his gang involvement were false, and that there was no evidence supporting the gang validation. Santos demanded that the prison expunge the gang validation from his file and release him to the general prison population. The Superior Court denied Santos’s petition, finding that sufficient evidence supported the gang validation. The California Court of Appeal and California Supreme Court summarily denied the petition.
On October 9, 2012, Santos filed a petition for a writ of habeas corpus in federal court, arguing that the gang validation violated his due process rights because it was “based on false, unreliable and insufficient information.” He sought release from the SHU. The district court dismissed the petition on the ground that Santos’s claims were not cognizable under the federal ha-beas statute, as they concerned the conditions, rather than the fact or duration, of his confinement. Santos timely appealed the district court’s decision.
II
We review de novo a district court’s decision to deny a petition for habeas corpus. Bailey v. Hill, 599 F.3d 976, 978 (9th Cir.2010). We also review de novo a district court’s determination that it does not have jurisdiction over a habeas corpus petition. Id.
Both Nettles’s and Santos’s appeals require us to determine when we lack jurisdiction over a claim raised in a habeas petition. By statute, federal courts must “entertain an application for a writ of ha-beas corpus in behalf of a person in custody pursuant to the judgment of a State *998 court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.” 28 U.S.C. § 2254(a); see also 28 U.S.C. § 2241(c)(3). According to the Supreme Court, this language, as well as “the common-law history of the writ” makes clear “that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.” Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).
In the leading case of Preiser, the Court considered whether prisoners who had lost good-time credits as a result of disciplinary proceedings could bring an action under 42 U.S.C. § 1983[4] for restoration of the credits on the ground that the proceedings violated their due process rights, or whether they were limited to bringing a habeas petition. Id. at 476-77, 93 S.Ct. 1827. The prisoners would have been entitled to immediate release from prison if their good-time credits had been restored. Id.
Because analyzing this issue required an inquiry into the respective spheres of habeas and civil rights actions, the Court first gave federal courts guidance as to what types of cases sounded in habeas. According to the Court, “when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.” Id. at 500, 93 S.Ct. 1827. The Court noted that the scope of habeas had evolved over the years. Id. at 485, 93 S.Ct. 1827. A person is deemed to be “in custody” for purposes of habeas when a person is subject to parole, id. at 486 n. 7, 93 S.Ct. 1827 (citing Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)), or even when the person is released on bail or on the person’s own recognizance, id. (citing Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973)). In addition, a prisoner is deemed to be seeking “release” from custody even when the prisoner will not gain freedom, but will be released into a different form of custody. See id. at 486, 93 S.Ct. 1827 (stating that the writ of habeas corpus is available to obtain release from the wrong institution to the correct institution) (citing Humphrey v. Cady, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972) and In re Bonner, 151 U.S. 242, 14 S.Ct. 323, 38 L.Ed. 149 (1894)). Finally, “the federal habeas corpus statute does not deny the federal courts power to fashion appropriate relief other than immediate release.” Id. at 487, 93 S.Ct. 1827 (internal quotation marks omitted). For instance, prisoners can challenge an unlawful loss of good-time credits even if restoration of such credits “merely shortened the length of their confinement, rather than required immediate discharge from that confinement.” Id.
Turning next to the appropriate scope of § 1983, the Court ruled that where prisoners challenged the fact or duration of their imprisonment, and sought immediate or speedier release from that imprisonment, they were precluded from bringing that challenge in a civil rights action under § 1983. Id. at 500, 93 S.Ct. 1827. The Court reasoned that although “the literal terms of § 1983 might seem to cover” claims that a prisoner’s confinement violated the Constitution, id. at 489, 93 S.Ct. *999 1827, there was, as the Court later put it, “an implicit exception from § 1983’s otherwise broad scope for actions that lie ‘within the core of habeas corpus,’ ” Wilkinson v. Dotson, 544 U.S. 74, 79, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) .(quoting Preiser, 411 U.S. at 487, 93 S.Ct. 1827). Because Congress passed the more specific habeas statute, requiring exhaustion of state remedies, to cover state prisoners’ constitutional challenges to their convictions and sentences, any prisoner complaint lying at “the core of habeas corpus” had to be brought by means of a habeas petition, not under § 1983. Preiser, 411 U.S. at 489-90, 93 S.Ct. 1827.[5]
The Court then examined the prisoners’ claims in light of these rulings. Because the prisoners in Preiser brought a challenge seeking relief that would result in' immediate release from prison, their claims “fell squarely within [the] traditional scope of habeas corpus.” Id. at 487, 93 S.Ct. 1827. Because the claims were “within the core of habeas corpus,” that was the prisoners’ exclusive remedy, and they were precluded from bringing the action under § 1983. Id. at 487-88, 500, 93 S.Ct. 1827.
Although Preiser helps delineate the core of habeas, it did not delineate the outer limits of habeas jurisdiction, the question before us here. Indeed, Preiser held this issue open, stating that “we need not in this case explore the appropriate limits of habeas corpus as an alternative remedy to a proper action under § 1983.” Id. at 500, 93 S.Ct. 1827.
We addressed this issue in cases following Preiser, and made clear that habeas jurisdiction was available only for claims that had some nexus to shortening the length of confinement. We did not, however, fully delineate the contours of this nexus. In Crawford v. Bell, we held that habeas did not extend to challenges to the “terms and conditions” of a prisoner’s incarceration, where the appropriate remedy would not include “release from confinement.” 599 F.2d 890, 891-92 (9th Cir.1979). In Bostic v. Carlson, we held that a prisoner could bring a petition in habeas to seek relief from various disciplinary decisions that resulted in “forfeiture of statutory good time or segregation from the general prison population,” where the relief was for “expungement of the incident from his disciplinary record” so long as' such “expungement is likely to accelerate the prisoner’s eligibility for parole.” 884 F.2d 1267, 1269 (9th Cir.1989). In Ramirez v. Galaza, we stated that a prisoner could not bring a habeas petition to seek expungement of a disciplinary charge where “a successful challenge to a prison condition will not necessarily shorten the prisoner’s sentence.” 334 F.3d 850, 859 (9th Cir.2003). In Docken v. Chase, we held that prisoners could bring claims in a habeas petition “challenging aspects of their parole review” so long as success on the claims “could potentially affect the duration of their confinement.” 393 F.3d 1024, 1031 (9th Cir.2004) (emphasis omitted). These cases together establish that habeas jurisdiction is available only for claims that, if successful, would have some shortening effect on the length of a person’s *1000 custody. We have not made clear, however, whether a claim has to necessarily, likely, or merely potentially accelerate release from confinement to be cognizable in habeas.
In Skinner v. Switzer, the Supreme Court again confronted the question, “[w]hen may a state prisoner, complaining of unconstitutional state action, pursue a civil rights claim under § 1983, and when is habeas corpus the prisoner’s sole remedy?” Skinner, 131 S.Ct. at 1298. In Skinner, the Court considered a prisoner’s lawsuit against a Texas district attorney for failing to provide DNA testing the prisoner requested. Id. at 1295. The Court concluded that the prisoner could assert that claim in an action under § 1983 rather than in a petition for a writ of habeas corpus because a judgment that simply orders DNA tests will not necessarily imply the unlawfulness of the state’s custody or spell speedier release. Id. at 1293.[6]
In reaching this conclusion, Skinner relied on Wilkinson v. Dotson, an earlier Supreme Court decision holding that prisoners could challenge the retroactive application of parole guidelines under § 1983 because their claims did not lie at the “core of habeas corpus.” Dotson, 544 U.S. at 82, 125 S.Ct. 1242 (internal quotation marks omitted). Skinner explained that “Dotson declared ... in no uncertain terms, that when a prisoner’s claim would not ‘necessarily spell speedier release,’ that claim does not lie at ‘the core of habeas corpus,’ and may be brought, if at all, under § 1983.” Skinner, 131 S.Ct. at 1299 n. 13 (emphasis added). Citing Justice Scalia’s concurrence in Dotson, Skinner indicated that the Court had never “recognized habeas as the sole remedy, or even an available one, where the relief sought would ‘neither terminat[e] custody, accelerate] the future date of release from custody, nor reduc[e] the level of custody.’ ” Id. at 1299 (emphasis added) (quoting Dotson, 544 U.S. at 86, 125 S.Ct. 1242 (Scalia, J., concurring)). Accordingly, Skinner adopted the line between § 1983 claims and habeas actions that it discerned in Dotson. Id.[7]
Applying Skinner’s ruling on the outer limits of habeas jurisdiction, we stated that *1001 federal courts lack habeas jurisdiction to consider claims for constitutional violations that do not necessarily spell speedier release. See Blair, 645 F.3d at 1157. In Blair, we considered whether a state prisoner could bring a habeas petition claiming that the California Supreme Court’s delay in processing his direct appeal deprived him of due process. Id. We dismissed this claim, in part because we lacked habeas jurisdiction. Id. at 1157-58. We explained that Dotson and Skinner “distinguish between claims that necessarily imply the invalidity of a conviction,” which must be brought in a habeas petition, and “claims for constitutional violations that do not necessarily spell speedier release and thus do not lie at the core of habeas corpus, which may be brought, if at all, under § 1983.” Id. at 1157. Because the prisoner’s claim did not challenge the validity of his conviction or “necessarily spell speedier release,” we concluded that it “belongs in a § 1983 complaint, not a habeas petition.” Id. at 1157-58; see also Griffin v. Gomez, 741 F.3d 10, 17 & n. 15 (9th Cir.2014) (“Though we had held that [an order requiring a change in conditions of confinement] could issue on a habeas petition, the Supreme Court [in Skinner, 131 S.Ct. at 1299 n. 13] has since held otherwise.”). But see Thornton v. Brown, 757 F.3d 834, 841 & n. 4 (9th Cir.2013) (stating in passing that § 1983 and habeas may provide alternative means to challenge prison conditions, and noting parenthetically that Skinner raised, but did not decide “the question whether ‘habeas [is] the sole remedy, or even an available one,’ for certain types of claims” (quoting Skinner, 131 S.Ct. at 1299) (alteration in original)).
We now reaffirm our statements in Blair and Griffin, and hold that we are bound by the Court’s express statement in Skinner that relief is available to a prisoner under the federal habeas statute only if success on the claim would “necessarily spell speedier release” from custody, which Skinner suggested would include termination of custody, acceleration of the future date of release from custody, or reduction of the level of custody. See Skinner, 131 S.Ct. at 1299 & n. 13.[8] This conclusion is not only consistent with the plain language of Skinner and our own previous interpretations of that case, it is also consistent with the Court’s precedents and the common law history of the writ. See Preiser, 411 U.S. at 484-86, 93 S.Ct. 1827; Dotson, 544 U.S. at 85-87, 125 S.Ct. 1242 (Scalia, J., concurring); Muhammad v. Close, 540 U.S. 749, 754-55, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004) (per curiam) (holding that a prisoner “raised no claim on which habeas relief could have been granted on any recognized theory” where the administrative determinations he challenged neither raised an implication about the validity of the underlying conviction nor necessarily affected the duration of time to be served). Accordingly, we conclude that under Skinner, in cases involving challenges to prison disciplinary proceedings, the writ of habeas corpus extends only to claims that, if successful, will “necessarily spell speedier release.” See Skinner, 131 S.Ct. at 1299 n. 13 (emphasis added). To the extent our cases have indicated that the writ of habeas corpus may extend to claims that, if successful, would merely be likely to or have the potential to lead to a speedier release, they are superceded by the Supreme Court’s rulings. See Miller v. Gammie, 335 F.3d 889, 893 (9th Cir.2003) (“[W]here the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening *1002 higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled.”)- Prisoners seeking to bring other challenges to prison conditions may have recourse to § 1983, which allows them to bring claims without exhausting state remedies or facing the highly deferential standard of review applicable to habeas claims.[9]
Ill
We now apply these principles to the habeas petitions filed by Nettles and Santos.
A
Nettles seeks two forms of relief. First, he seeks expungement of the February 26, 2008 rules violation report for threatening to stab a corrections officer. Second, he seeks restoration of the thirty days of post-conviction credit that were lost based on a finding that he was guilty of the alleged rules violation. We must determine whether either of these forms of relief will “necessarily spell speedier release” from custody. See Skinner, 131 S.Ct. at 1299 n. 13.
1
In order to understand Nettles’s arguments that both claims are cognizable in habeas, it is first necessary to review certain aspects of California’s parole system. If a prisoner, like Nettles, has been given a life sentence with the possibility of parole, the earliest date on which such a prisoner may be released on parole is termed the “minimum eligible parole date.” Cal. Code Regs. tit.15, § 2000(b)(67). This date is set by statute, and the California Department of Corrections is responsible for calculating it. Id. § 2400.
One year before a prisoner reaches the minimum eligible parole date, the Board (or a panel of two or more commissioners) meets with the inmate, and sets a parole release date “unless it determines that the gravity” of the prisoner’s offenses “is such that consideration of the public safety requires a more lengthy period of incarceration.” Cal. Penal Code § 3041(b); see also Cal. Code Regs. tit. 15, § 2281(b) (listing information considered in determining whether a prisoner is suitable for release on parole). If the Board decides not to set a parole release date, the Board will schedule the next hearing for a period ranging from three to fifteen years, depending on statutory criteria. Cal. Penal Code § 3041.5(b)(3).
If the Board determines that the prisoner is suitable for parole, it will calculate a parole date in the manner required by the regulations. Cal. Code Regs. tit. 15, §§ 2289, 2317. First, the Board calculates a base term, using a matrix set out in the regulations. Id. §§ 2282, 2403. Among other factors, the Board may consider post-conviction credit accrued by the prisoner for time served, but “[i]n no case may post conviction credit advance a release *1003 date earlier than the minimum eligible parole date.” Id. § 2290(a). After the base term has been determined, the prisoner’s post-conviction credits are subtracted to determine the adjusted term. Id. § 2411(a). If this calculation establishes that the prisoner has served time equal to or greater than the adjusted term, the prisoner is entitled to release. Id. § 2289.
2
Nettles argues that expunging the 2008 rules violation report from his record is reasonably likely to accelerate his release. He argues that under California law, the Board “shall normally set a parole release date” unless the Board determines that “the inmate constitutes a current threat to public safety.” See In re Lawrence, 44 Cal.4th 1181, 82 Cal.Rptr.3d 169, 190 P.3d 535, 546, 553 (2008) (internal quotation marks omitted). Nettles argues that without the 2008 rules violation on his record, he would be able to present the Board fifteen years free of any actions relating to drugs or violence, and this would have some effect in accelerating his release. While acknowledging that the 2009 hearing panel might not have found him eligible for parole, even without the 2008 rules violation report, Nettles claims that at a minimum, the Board would have scheduled the next parole suitability hearing at an earlier date, or that Nettles would be able to accelerate the next hearing due to a “change in circumstances.” Cal. Penal Code § 3041.5(d). Further, Nettles claims that the existence of the 2008 rules violation report on his record will detract from the Board’s consideration of his parole suitability for years to come. Because the expungement relief Nettles requests will prevent these roadblocks to parole, Nettles contends his claims are cognizable in habeas.
We reject these arguments, because the effect of an expungement of the 2008 rules violation report is too attenuated to meet the Skinner standard. While the 2008 rules violation report will likely have some effect on the Board’s consideration, there is no basis for concluding that the ex-pungement of this report from the record will “necessarily spell speedier release” for Nettles. See Skinner, 131 S.Ct. at 1299 n. 13. Nor will it necessarily terminate Nettles’s custody, accelerate the future date of his release, or reduce his level of custody. See id. The effect of a rules violation on parole suitability is a matter of state law or regulation, and, under California law, a rules violation is merely one factor the parole board considers to determine whether a prisoner “constitutes a current threat to public safety,” Lawrence, 82 Cal.Rptr.3d 169, 190 P.3d at 553; it is not determinative, see Cal. Code Regs. tit. 15, § 2281(b) (directing the parole board to consider “[a]ll relevant, reliable information” in determining suitability for parole). Here, the Board considered a range of relevant factors bearing on Nettles’s future dangerousness, including his inability to learn from prior imprisonments, his lack of insight and remorse regarding his crimes, and his argumentative and stubborn attitude. Even if successful, Nettles “will not necessarily shorten the length of his confinement” because “[t]he parole board will still have the authority to deny ... parole on the basis of any of the grounds presently available to it in evaluating such a request.” See Ramirez, 334 F.3d at 859 (first alteration in original) (internal quotation marks omitted). As Close pointed out, even when a challenge to prison disciplinary proceedings “may affect the duration of time to be served (by bearing on the award or revocation of good-time credits),” where “it is not necessarily so,” a challenge to such proceedings “raise[s] no claim on which habeas relief could have been granted.” 540 U.S. at 754-55, 124 S.Ct. 1303 (emphasis added). *1004 Therefore, this claim is not cognizable in habeas.
Nettles also argues that a restoration of post-conviction credits would have an effect on the duration of his confinement. While he acknowledges that restoring the post-conviction credits would not impact his minimum eligible parole date, which had already passed at the time he was deprived of the credits, Nettles contends that restoration of the credits will reduce the term he must serve before being released, once the Board determines he is eligible for parole and sets a term for his release.
Again, we reject this argument. Although the loss of post-conviction credit could lead to a longer term under some circumstances, the effect in Nettles’s case is far too attenuated to meet the standard set forth in Skinner. First, the Board has not yet found Nettles to be suitable for parole, and it is unknown whether the Board will do so at the next parole hearing. If Nettles is eventually found suitable for parole, and a term is calculated, a deprivation of post-conviction credits could affect his release date only if the base .term exceeded the time already served. See Cal. Code Regs. tit. 15, § 2289. Without knowing how many years Nettles will serve before the Board finds him suitable for parole or the length of his base term, we cannot conclude that restoration of the lost good-time credits would necessarily affect the duration of Nettles’s confinement if and when the Board finds him suitable for parole.
Because neither expungement of the 2008 rules violation report nor restoration of the lost good-time credits would necessarily accelerate the future date of Nettles’s release from custody, we hold that his claim is not cognizable under the federal habeas statute. See Skinner, 181 S.Ct. at 1299 & n. 13.
B
We next turn to Santos’s claim seeking expungement of the gang validation from his record and release from the SITU to the general prison population. If successful, Santos’s claim would result in immediate release from the SITU, but would not result in immediate release from prison.
We have previously held that “[h]abeas corpus jurisdiction is also available for a prisoner’s claims that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation, without due process of law.” Bostic, 884 F.2d at 1269. The Seventh Circuit has similarly concluded:
If the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation-—-then habeas corpus is his remedy.
Graham v. Broglin, 922 F.2d 379, 381 (7th Cir.1991). In reaching this conclusion, Graham distinguished challenges seeking release from one type of custody to another from cases challenging prison conditions. See id. (stating that if a prisoner is “seeking a different program or location or environment, then, he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law, even if, as will usually be the case, the program or location or environment that he is challenging is more restrictive than the alternative that he seeks.”).-
We are bound by our ruling in Bostic, because the Supreme Court’s case law is not “clearly irreconcilable” with our earlier determination that we have habeas jurisdiction over a claim that would result *1005 in release from disciplinary segregation to the general prison population. See Gammie, 335 F.3d at 893. The Court has long indicated that a prisoner’s claim for release from one form of custody to another, less restrictive form of custody, can be brought in a habeas petition. See Skinner, 131 S.Ct. at 1299 (suggesting that habeas was available where the relief sought would reduce the level of custody); Preiser, 411 U.S. at 486, 93 S.Ct. 1827 (stating there is habeas jurisdiction for claims seeking release on parole, bail, or on one’s own recognizance); see also Garlotte v. Fordice, 515 U.S. 39, 47, 115 S.Ct. 1948, 132 L.Ed.2d 36 (1995) (prisoner’s claim seeking speedier release from imprisonment to parole was cognizable in habeas). And the Court has not directly addressed the question whether a challenge to the degree of constraints in prison (such as a release from administrative or disciplinary segregation) is a claim seeking release from custody, or merely a challenge to conditions of confinement. See Close, 540 U.S. at 751 n. 1, 124 S.Ct. 1303 (declining to rule on the question whether a prisoner might have a habeas • claim to challenge “special disciplinary confinement for infraction of prison rules”); see also Dotson, 544 U.S. at 86, 125 S.Ct. 1242 (Scalia, J. concurring) (suggesting that “permissible habeas relief’ could include a “quantum change in the level of custody”) (citing Graham, 922 F.2d at 381). Accordingly, we remain bound by the determination in Bostic that a prisoner can seek expungement of an incident from his disciplinary record when that would lead to speedier release from disciplinary segregation.[10] See Bostic, 884 F.2d at 1269. As suggested in Graham, however, a prisoner who is not seeking a quantum change in thé level of custody, such as release from disciplinary segregation to the general prison population, or release from prison on bond, parole, or probation, but is merely “seeking a different program or location or environment” even if “the program or location or environment that he is challenging is more restrictive than the alternative that he seeks,” does not meet the requirement in Skinner.[11] See Graham, 922 F.2d at 381.
*1006 Here, Santos claims that the process by which he was validated as a gang member violated his due process rights, and, as a result of this unconstitutional validation, he was confined in the SHU, which is a disciplinary segregation facility imposing a greater quantum of custody. The remedy Santos seeks of expungement of the gang validation from his record and release from the SHU to the general prison population, “can fairly be described as a quantum change in the level of custody.” See id. at 381. Additionally, success on his claim would result in his immediate release from the SHU to the general prison population. His claim that he has been subjected to greater restrictions of his liberty without due process of law is therefore properly brought as a petition for a writ of habeas corpus.[12] See Skinner, 131 S.Ct. at 1299 & n. 13; Bostic, 884 F.2d at 1269. Because the district court erred in dismissing Santos’s petition, we remand to the district court for further proceedings on the merits of Santos’s claim.
AFFIRMED IN APPEAL NO. 12-16935, REVERSED AND REMANDED IN APPEAL NO. 13-15050.

. These appeals are ordered consolidated for purposes of this disposition.

. At the time of the hearing, the Board was referred to as the Board of Prison Terms. This entity was replaced by the Board of Parole Hearings in 2005. See Cal. Gov’t Code § 12838.4.

. As the state acknowledges, it did not argue to the district court that Nettles’s claim was procedurally barred. Nor does the state raise this issue on appeal. Therefore, we do not address it.

. Section 1983 provides that: "Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured_”42 U.S.C. § 1983.

. Heck v. Humphrey further limited the scope of § 1983, holding that claims for damages that necessarily imply the invalidity of a conviction or sentence are cognizable under § 1983 only if the plaintiff proves that the conviction or sentence has been reversed, expunged, or declared invalid. 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In establishing this “favorable termination” rule, the Court reasoned that the sort of action described in Heck is most closely analogous to the common-law cause of action for malicious prosecution, which requires "termination of the prior criminal proceeding in favor of the accused.” Id. at 484, 114 S.Ct. 2364.

. The Court previously indicated that a claim that does not imply the invalidity of the underlying conviction or "necessarily” affect the duration of time to be served, is not a claim on which habeas relief can be granted. Muhammad v. Close, 540 U.S. 749, 754-55, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004) (per curiam). In Close, the Supreme Court limited the applicability of Heck by holding that its favorable termination requirement was not applicable, and the prisoner could bring a § 1983 claim, when the prisoner challenged administrative determinations that did not "raise any implication about the validity of the underlying conviction” or "necessarily” affect "the duration of time to be served,” because such a challenge "raised no claim on which habeas relief could have been granted on any recognized theory.” Id.

. The dissent argues that we are not bound by Skinner's distinction between claims that may be brought in a habeas action and those that may be brought in a § 1983 claim because Skinner's interpretation of Dotson is wrong. But, of course, we áre bound by the Supreme Court’s statements and its characterization of its own precedent, regardless whether we believe our interpretation of its precedents is superior. Cf. Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir.2001) ("A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it. Judges of the inferi- or courts may voice their criticisms, but follow it they must.”); Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.”).

. The dissent complains that our reading of Skinner is "strained,” but our interpretation is consistent with the interpretation adopted by two prior panels. See Blair, 645 F.3d at 1157-58; Griffin, 741 F.3d at 17 & n. 15.

. The clarity provided by Skinner’s distinction between habeas and § 1983 actions not only provides guidance to prisoners regarding the correct form of action for their claims, but also resolves much of the understandable confusion of prison officials regarding which prisoner claims are cognizable in habeas. In these appeals, for instance, the state argued in favor of interpreting Skinner as precluding habeas petitions for claims that do not lie at. the core of habeas, even though such a rule channels prisoner claims towards the more flexible § 1983 cause of action. In Skinner itself, by contrast, the state took the opposite position, urging that an action raising a due process claim relating to DNA testing was at "the core of the criminal proceeding itself” and had to be brought in habeas. 131 S.Ct. at 1299 n. 13 (quoting oral argument transcript).

. After concluding it had no need to address the validity of an order releasing a prisoner from disciplinary segregation, Griffin nevertheless noted in passing that Skinner now precluded such an order from issuing in a habeas petition. See Griffin, 741 F.3d at 17-18 & nn. 14-15. While we agree with Griffin's conclusion that Skinner precludes a prisoner from challenging conditions of confinement in habeas, we disagree with Griffin’s extension of this rule to preclude habeas challenges to quantum changes in levels of custody. Because Griffin uttered this overly restrictive gloss on Skinner "casually and without analysis,” and "in passing without due consideration of the alternatives” as “a prelude to another legal issue that command[ed] the panel’s full attention,” it is not binding precedent in our circuit. In re Wal-Mart Wage & Hour Emp’t Practices Litig., 737 F.3d 1262, 1268 n. 8 (9th Cir.2013); see also In re Magnacom Wireless, LLC, 503 F.3d 984, 993-94 (9th Cir.2007).

. Prior to Skinner, there was a circuit split over “the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of confinement.” Spencer v. Haynes, 774 F.3d 467, 470-71 & n. 6 (8th Cir.2014) (quoting Bell v. Wolfish, 441 U.S. 520, 526 n. 6, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). As explained in Spencer, the D.C., Second, Third, Fourth, and Sixth Circuits "firmly [stood] in the camp of allowing conditions-of-confinement claims to be brought in the habeas corpus context,” whereas the Eighth, Fifth, Seventh, Ninth, and Tenth Circuits held that habeas petitions are not "appropriate procedural vehicles by which to remedy conditions-of-confinement claims.” Id. Skinner goes a long way towards resolving this circuit split by holding that relief is available to a prisoner under the federal habeas statute only if success on the claim would "necessarily spell speedier release from custody,” including termination of custody, acceleration of the future date of release from *1006 custody, or reduction of the level of custody. See Griffin, 741 F.3d at 17 & n. 15. But cf. Aamer v. Obama, 742 F.3d 1023, 1026 (D.C.Cir.2014) (concluding, after Skinner was decided but without discussing it, that challenges to the conditions of confinement “properly sound in habeas corpus”).

. Because we conclude that Santos’s claim that his gang validation resulted in an increased level of custody is sufficient to render the claim cognizable under the federal habeas statute, we need not address Santos’s additional argument that his claim is cognizable because his gang validation also effectively deprived him of any meaningful opportunity for release on parole and resulted in the loss of the right to earn good-time credit.