NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 6 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MATTA JUAN SANTOS,<br><br>        Petitioner-Appellant,<br><br>  v.<br><br>K. HOLLAND and MATTHEW CATE,<br><br>        Respondents-Appellees. | No.    17-16271<br><br>D.C. No.<br>1:12-cv-01651-LJO-EPG<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, Chief Judge, Presiding

Argued and Submitted September 6, 2018
San Francisco, California

Before:  BERZON and FRIEDLAND, Circuit Judges, and CARDONE,** District
Judge.

Petitioner-Appellant Matta Juan Santos appeals the district court's denial of

his habeas petition under 28 U.S.C. § 2254.  In 2011, Santos was validated as an

associate of the Mexican Mafia prison gang and transferred to the Secured Housing

---

        *        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

        **        The Honorable Kathleen Cardone, United States District Judge for the
Western District of Texas, sitting by designation.

Unit ("SHU") at Pelican Bay prison. After exhausting his administrative appeals and the state habeas process, Santos filed a federal writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). In a prior appeal, we held that there was habeas jurisdiction over Santos's claim, because the primary remedy sought by Santos—release from the SHU—would result in a quantum change to his level of custody. *See Nettles v. Grounds*, 788 F.3d 992, 1004–06 (9th Cir. 2015).

On remand, the district court denied relief on the ground that the state habeas courts' adjudication of his due process claims were not contrary to, or an unreasonable application of, clearly established federal law. We affirm.

## I.

Before considering the merits of Santos's petition, we must consider our jurisdiction to hear this case in light of Santos's release from the SHU in 2016. We review de novo whether an inmate's claims are cognizable under the habeas statute. *Bailey v. Hill*, 599 F.3d 976, 978 (9th Cir. 2010). We likewise review de novo questions of mootness. *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1116 (9th Cir. 2003).

A panel of this Court already concluded that Santos's claims are "cognizable under the federal habeas statute." *See Nettles*, 788 F.3d at 1006 n.12. And the Supreme Court has explained that "once the federal jurisdiction has attached in the

2

District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968); *see also Munoz v. Rowland*, 104 F.3d 1096, 1097 (9th Cir. 1997); *Cox v. McCarthy*, 829 F.2d 800, 802–03 (9th Cir. 1987).

Nor are Santos's claims moot. A habeas case is not moot if collateral consequences necessarily flow from a challenged decision or ruling. *See Robertson v. Pichon*, 849 F.3d 1173, 1177 n.1 (9th Cir. 2017); *cf. Spencer v. Kemna*, 523 U.S. 1, 9–14 (1998) (holding collateral consequences that are discretionary and speculative are not sufficient to maintain habeas claim). California regulatory provisions that govern the treatment of inmates in the state prison system indicate that collateral consequences necessarily flow from the challenged gang validation. Once inmates are validated, prison officials "shall track their movement, monitor their conduct, and take interdiction action, as necessary." Cal. Code Regs. Tit. 15, § 3378.2(c). Consequently, as long as Santos remains incarcerated, he is automatically branded a threat to prison safety and subjected to specialized treatment among inmates by virtue of his status as a validated gang associate. *See id.* §§ 3023(a), 3378.2(c). Additionally, given that inmates "shall be immediately removed from the [general population] and placed in administrative segregation" if they present an immediate threat to the safety of others or "endanger institution security," it seems hardly speculative that Santos's

3

validation might form the basis of a decision to return him to the SHU. *See id.* §

3335. We therefore conclude that Santos's claims are not barred by the mootness

doctrine.

## II.

Santos argues that his right to due process was violated because he did not

receive adequate notice concerning the evidence against him; because he did not

receive a hearing with the prison official tasked with transferring him to SHU; and

because prison officials did not have sufficient evidence to identify him as a gang

associate. We review de novo the district court's decision to deny habeas relief.

*Hardy v. Chappell*, 832 F.3d 1128, 1135 (9th Cir. 2016).

## A.

Santos's argument regarding notice implicates the process by which prison

officials disclosed the evidence supporting his validation providing him with an

opportunity to respond. Santos asserts that he did not receive one document

("CDC Form 1030") to which he was entitled, and that redactions in a separate

document ("CDC 128-B") concealed the relevant information depriving him of a

meaningful response. Given these deficiencies, Santos argues, his right to due

process was violated because he could not present a defense against the prison's

charges. Although Santos received only limited notice as to the basis for his

alleged gang affiliation, he cannot show that the state habeas courts' decisions as to

4

the adequacy of notice are "contrary to, or involved an unreasonable application of, clearly established Federal law," as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). The relevant Supreme Court precedent applicable to Santos's claim is *Hewitt v. Helms*, 459 U.S. 460 (1983). In *Hewitt*, the Court held that before a prisoner can be transferred to administrative segregation, due process requires that he "must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him." *Id.* at 473–76. More recently, the Court indicated that notice is adequate if prison officials disclose "the factual basis" of their allegations against the inmate. *See Wilkinson v. Austin*, 545 U.S. 209, 226 (2005) (discussing the procedural protections required before an inmate can be transferred to a "Supermax" facility).

Even assuming the facts are as Santos argues, there is little doubt that he understood the factual basis of the charges against him. The documents he acknowledges receiving listed the evidence that prison officials relied on to validate him. That evidence included a necklace featuring a gang-related symbol that was found in Santos's cell, his possession of a validated gang member's contact information, and a confidential memorandum from an informant. Furthermore, the documents Santos received were replete with references to the Mexican Mafia and specified that prison officials suspected him of being "an

5

active associate." Although the CDC Form 1030 that was allegedly withheld contained an accusation that Santos was the Mexican Mafia's representative in a particular facility as of a specific date, another document he received disclosed the relevant date. And while the CDC 128-B that Santos initially received was redacted, he was subsequently given an unredacted version and allowed a second opportunity to submit a written response. Given that only "some notice" is required, the state court decisions here were not contrary to clearly established Supreme Court law. *Hewitt*, 459 U.S. at 476.

**B.**

Santos's second due process claim turns on whether the relevant prison official reviewed Santos's written responses prior to his validation. Santos contends that, at the very least, he is entitled to an evidentiary hearing to determine who the relevant official was and whether that official reviewed his responses. Again, we disagree.

In *Hewitt*, the Supreme Court explained that an inmate is entitled to "an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." 459 U.S. at 476. Santos avers that the relevant decisionmaker in this case is likely the Institutional Gang Investigator ("IGI"), which comports with our precedent. *See Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990); *see also Madrid v. Gomez*, 889 F.

6

Supp. 1146, 1277 (N.D. Cal. 1995). Assuming the accuracy of Santos's averment, we must defer to the state court's decision "so long as the state court could have reasonably concluded that the evidence already adduced was sufficient" to determine that the IGI reviewed Santos's responses. *See Hibbler v. Benedetti*, 693 F.3d 1140, 1147 (9th Cir. 2012).

There is evidence in the state court record from which a reasonable inference can be made that the IGI reviewed both of Santos's written responses. According to the opinion from Santos's third level administrative appeal, the IGI is the official who determined that Santos should receive the unredacted CDC 128-B and provided Santos the opportunity to submit a second written response because the redacted version "did not provide [Santos] with enough information." The third level opinion further states that both of Santos's written responses were included in the validation package submitted by the IGI and considered prior to his validation. Under AEDPA, the standard is not "whether the state court's [factual] determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Landrigan*, 550 U.S. at 473. Given that the IGI is the official who concluded that the redacted CDC 128-B was inadequate and that he submitted the validation package with both responses, we cannot say that it was unreasonable to infer that the IGI reviewed both responses. *See id.* at 473–74; *Hibbler*, 693 F.3d at 1147.

**C.**

Santos final claim is that the prison's evidence was unreliable and thus does not meet the "some evidence" standard.

The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Superintendent, Massachusetts Correctional Institute, Walpole v. Hill*, 472 U.S. 445, 455 (1985). Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. Due process "does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Id.* at 456.

A state court could reasonably conclude that the decision to validate Santos was supported by some evidence. The *Hill* standard is fulfilled where a single piece of evidence bearing the requisite indicia of reliability supports the prison's decision. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). Here, Santos's possession of a necklace featuring a gang-related symbol and the contact information of a validated gang member constitutes some evidence. *See Castro v. Terhune*, 712 F.3d 1304, 1314 (9th Cir. 2013) (inmate's possession of a picture with a gang-related symbol and of a birthday card signed by validated gang members fulfilled the "some evidence" standard). The same is true regarding the

8

confidential memorandum in light of the fact that the memo's source incriminated himself in providing the information. *See Bruce*, 351 F.3d 1287–88 (statement of confidential prison informant constituted some evidence). Accordingly, we reject Santos's argument regarding the sufficiency of the evidence.

**AFFIRMED.**

*Santos v. Holland*, No. 17-16271

FRIEDLAND, Circuit Judge, dissenting:

I believe that the Government mooted Santos's original claim about avoiding placement in solitary confinement by agreeing to settle with a class of prisoners, including Santos, who had been confined in segregated housing units ("the SHU") based solely on their validation as gang members. *See* Settlement Agreement, *Ashker v. Governor of California*, No. C-09-05796 (N.D. Cal. Oct. 5, 2016) ("*Ashker*"). As a result, Santos's only remaining due process claim about avoiding the gang validation now falls outside the "core of habeas" under *Nettles v. Grounds*. 830 F.3d 922 (9th Cir. 2016) (en banc) ("*Nettles II*"). I therefore believe we lack habeas jurisdiction and that we should remand for Santos to be given the opportunity to re-plead his case under 42 U.S.C. § 1983.

In my view, the majority errs by misunderstanding the nature of Santos's current claims. At the start of this litigation, Santos's interests in avoiding gang validation and confinement in the SHU were intertwined—he was confined in the SHU precisely because he had been validated as a member of the Mexican Mafia. And, as the majority notes, we previously held that Santos's claims in that posture were cognizable in habeas. *See Nettles v. Grounds*, 788 F.3d 992, 1004-06 (9th Cir. 2015) ("*Nettles I*"). But Santos's claims are not in the same posture today. After *Nettles I* was decided, the state of California reached the settlement in

1

*Ashker*, agreeing that it would no longer place inmates in solitary confinement solely on the basis of their gang validation status.

The majority overlooks the complications that the settlement created for Santos's claims. Under the State's post-*Ashker* regulations, Santos cannot be transferred to the SHU on the basis of his gang validation alone—he would have to commit some new violation to justify such confinement. *See* Cal. Code Regs. tit. 15, § 3314(a)(3)(L) (possessing or displaying gang symbols); *id.* § 3315(a)(3)(Z) (demonstrating "status as a recognized member and/or leader of a[] [Security Threat Group]"). Accordingly, even though collateral consequences necessarily flow from Santos's validation in the form of increased monitoring, preventing Santos's challenge to his validation from being moot, placement in the SHU on that status alone is not one of those consequences.

The majority suggests that because the regulations consider "Security Threat Groups" as "jeopardiz[ing] public safety," *id.* § 3023(a), and because prison officials have the authority to place any inmate in the SHU if they present an immediate threat to the safety of others or institution security, *see id.* § 3335, "it seems hardly speculative that Santos's validation might form the basis of a decision to return him to the SHU." But the fact remains that the *Ashker* settlement expressly guarantees that gang validation alone cannot support removal, meaning that it is *entirely* speculative to say that Santos's validation will be used to

2

justify his return to the SHU absent some additional reason. In addition, because there must be an added reason, prison officials have at least some discretion over whether to return Santos to the SHU even though he is gang validated. Because the *Ashker* settlement rendered Santos's return to the SHU both speculative and within the discretion of prison officials, Santos cannot maintain his habeas claim on the basis of anticipated return to the SHU. *See Spencer v. Kemna*, 523 U.S. 1, 9-14 (1998) (holding that collateral consequences that are discretionary and speculative are not sufficient to maintain habeas claim).

Because Santos is left only with an interest in avoiding gang validation based on the extra monitoring it causes him to endure, his claim is not within the "core of habeas" defined by the en banc decision in *Nettles II*. I believe that we therefore no longer have statutory jurisdiction over Santos's remaining claim. In assessing whether there is statutory habeas jurisdiction, *Nettles II* instructs us to ask whether resolution of the petitioner's claim would "necessarily affect the length of time to be served," 830 F.3d at 929, or "reduc[e] the level of custody." *Id.* at 930 (quoting *Skinner v. Switzer*, 562 U.S. 521, 534 (2011)). In *Nettles II* itself, we held that such a rule left Nettles's challenge to disciplinary proceedings underlying a rules violation to be outside the core of habeas "because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole" or otherwise shorten his time in custody. *Id.* at 934-35, 34 n.12.

Holding that the prison's gang validation procedures violated due process would similarly have no automatic effect on Santos's release from custody.[1]

Although habeas is no longer the proper vehicle for Santos's claims, "a district court may construe a petition for habeas corpus to plead a cause of action under § 1983 after notifying and obtaining informed consent from the prisoner." *Id.* at 936. Accordingly, I would vacate the district court's judgment on the merits and remand with instructions to dismiss Santos's habeas petition for lack of jurisdiction, but with leave to amend to assert claims under § 1983 if he chooses.

For these reasons, I respectfully dissent.

---

[1] The majority also contends that the "core of habeas" statutory jurisdictional requirement is similar to the "in custody" jurisdictional requirement in that, once habeas jurisdiction attaches, "it is not defeated by the release of the petitioner prior to completion of proceedings on such application." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). But the majority cites to no authority for this proposition. And the rule that release from custody does not defeat jurisdiction in a habeas case where the petitioner still seeks a traditional habeas remedy (such as vacating a conviction, which was the remedy sought in *Carafas*) does not seem to me to address what should happen here given the holding in *Nettles II* that the remedy Santos seeks in what is left of his lawsuit is no longer a habeas remedy at all.

The majority has also cited to *Munoz v. Rowland*, 104 F.3d 1096 (9th Cir. 1997), in which we observed that statutory habeas jurisdiction "is not necessarily affected by [the petitioner's] release from custody." *Id.* at 1097. Like this case, *Munoz* involved a petitioner challenging a gang validation on Due Process grounds. But I read our decision there as essentially assuming without deciding that there was statutory jurisdiction, as that issue did not matter in light of the holding that the petition needed to be dismissed as moot under Article III. *Id.* And, to the extent *Munoz* could be read as holding anything about statutory habeas jurisdiction existing for all challenges to gang validation, it was superseded at least in part by the en banc decision in *Nettles II*.

4